OPINION OF THE COURT
Harold Tompkins, J.
Plaintiff Jon H. Hammer, a practicing attorney, seeks to recover damages from the defendants Continental Insurance Companies and Continental Insurance Company (Continental) for negligently stopping payment on a draft issued to plaintiff and his client in settlement of a personal injury action.
Mr. Hammer was the only witness called at trial. He testified in substance that pursuant to a negotiated settlement, the lawsuit entitled Mello v Mathias & Carr on which he represented the plaintiff was settled with the defendants’ insurance carrier for $10,000. The carrier involved is the defendant in this action.
On January 22, 1981, plaintiff notified defendants’ adjuster with whom the case was settled that the law firm representing Mr. Mello had been recently dissolved and that Mr. Hammer was the only attorney with an interest in the case. The apparent motivation behind this letter was *213 Mr. Hammer’s desire to inform Continential that the settlement check could be made payable to Mr. Mello and Jon H. Hammer, attorney, rather than Mello and Cabell and Hammer, as attorneys. Plaintiff testified that he also told the adjuster that a check payable to Mello and the dissolved partnership of Cabell and Hammer, would be acceptable.
Plaintiff then received a standard settlement draft payable to “Abel D. Mello and Cabell and Hammer as attorneys” on February 6, 1981. The client, Mr. Mello, indorsed the draft and the plaintiff immediately issued a check to his client for $7,000 from the Cabell and Hammer office account postdated “a couple of days”. Plaintiff then added his indorsement to the draft, “Cabell and Hammer, as attorneys, jan m. hammer”. The draft was mailed for deposit to plaintiff’s office account (the same account upon which the $7,000 postdated check was drawn) at the Scars-dale National Bank on February 7, 1981.
When plaintiff’s Scarsdale Bank, after receipt of the mail deposit, presented the check to Manufacturers Hanover, it’s clearing house bank, Scarsdale was informed by them that payment had been stopped for a better indorsement. Plaintiff testified that Continental had instructed Manufacturers to stop payment. It is this act by Continental that forms the basis of this action.
It was defendants’ position at trial that, in light of the dissolution of Cabell and Hammer, a proper indorsement of the draft would have to include an officer of the firm, or partner. Plaintiff contended that the direction on the back of the draft to “endorse exactly as drawn” controlled and that the indorsement complied with that direction and further that defendant was negligent in returning the check as improperly indorsed.
The draft was returned to plaintiff and pursuant to defendants’ instructions, redeposited on February 23, 1981. The draft was eventually paid on February 25,1981.
Plaintiff claims he has been damaged by defendants’ negligence and that as a result of defendants’ careless conduct, plaintiff was forced to expend considerable amounts of office time attempting to rectify the matter. *214 Plaintiff further claims that he was embarrassed with his client since his check for $7,000 was not good and his professional reputation as well as his credit standing have been irreparably harmed. Subdivision (3) of section 3-507 of the Uniform Commercial Code specifically states that return of a check for proper indorsement is not dishonor of the instrument.
In light of the dissolution of plaintiff’s partnership, the court is not persuaded by the credible evidence adduced at trial that the additional precautions taken by defendant in returning the check constituted negligence.
The court also finds that the plaintiff did not prove by a preponderance of the credible evidence that he had sustained any damages. The testimony of Mr. Hammer, with regard to damages was, at best, speculative. Furthermore, any damage to plaintiff’s professional reputation was proximately caused by Mr. Hammer’s own negligence in depositing a settlement draft of $10,000 in his office account and issuing a postdated check to himself for $3,000 prior to the draft being paid. By his own testimony, Mr. Hammer was aware that bank practice was for checks to take from 3 to 5 and possibly 7 days to clear.
Had the draft, rather than being deposited in his office account, been deposited in a client’s escrow account he might have more appropriately waited for advice of payment before issuing the check to his client. (See Code of Professional Responsibility, DR 9-102 [A] [2].) It is not within this court’s jurisdiction to pass upon the "technical” commingling of funds as evidenced in this case. It may appear that the exchange check practice is one that requires sanctions to protect the public.
The court finds that based upon the preponderance of the credible evidence that defendant was not negligent and that no damages were sustained by plaintiff.